IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN G. SMITH, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-1417 |
| R.R. DONNELLEY AND SONS COMPANY, | : | |
| | : | |
|     Defendant. | : | |

**MEMORANDUM AND ORDER**

Tucker, J.                                                                                             September ___, 2011

    Presently before this Court is Defendant's Motion for Summary Judgment (Doc. 13), Plaintiff's Response in Opposition thereto (Doc. 15), and Defendant's Reply (Doc. 17). For the reasons set forth below, the Court denies Defendant's Motion.

**I.  BACKGROUND**

    Plaintiff, a Pennsylvania resident, initiated this action against Defendant, a Delaware corporation, for allegedly wrongfully terminating his employment because he pursued a worker's compensation claim. The facts giving rise to Plaintiff's Complaint are as follows. Plaintiff worked for Defendant from 1975, most recently as an assistant press operator at Defendant's plant located at 391 Steel Way, Lancaster, Pennsylvania 17601 ("Steel Way Plant"), until his employment was terminated on June 8, 2009. Although Plaintiff received a few warnings regarding attendance and quality issues during his tenure with Defendant, his overall employment was satisfactory.

    On March 12, 2009, Plaintiff was working beside a print press when he claims he inadvertently collided heads with his coworker Amanda Sierra. At the time, Plaintiff did not

think he sustained any injuries from the collision and continued to work. Over the next few days, however, Plaintiff noticed problems developing in his left eye. On March 19, 2009, Plaintiff sought treatment with a physician who diagnosed Plaintiff with detached retinas in both eyes and a vitreous hemorrhage in his left eye. The physician indicated that the collision Plaintiff suffered at work could have been a possible cause of the detached retinas, or could have aggravated pre-existing retinal tears. Plaintiff ultimately had eye surgery on March 20, 2009 to treat the condition.

On March 20, 2009, one hour before the surgery was to take place, Plaintiff called his supervisor, Candido Crespo, to report that he had suffered a work-related injury resulting from the collision with Ms. Sierra eight days earlier. Shortly after speaking with Crespo and upon Crespo's advice, Plaintiff called and reported the accident to Clare Sterback, a MedCor Workplace Management Nurse assigned to the Steel Way Plant. In an email to several of Defendant's management personnel, Ms. Sterback indicated that she would file a claim with Workers Compensation and collect the required medical information to pass on to the claim representative. (See Doc. 16, Ex. F.)

On March 21, 2009, Mr. Crespo interviewed Ms. Sierra as part of the internal investigation into the alleged incident. Ms. Sierra indicated that she could not recall ever having collided with Plaintiff. Ken Engle another co-worker who worked on the same press as Plaintiff and Ms. Sierra also informed Mr. Crespo that he had not observed any collision, nor had he heard Plaintiff mention the collision prior to Plaintiff's report. (See Doc. 16, Ex. G.)

On March 23, 2009, Plaintiff was interviewed by Sonya Lucas, an employee of Gallagher Bassett, the third party administrator for Defendant's worker's compensation benefit program.

Gallagher Bassett ultimately notified Plaintiff that Defendant would not pay worker's compensation benefits based on the alleged collision. (See Doc. 16, Ex. B.) Plaintiff never filed a claim petition with Pennsylvania's Worker's Compensation Bureau challenging that denial, and Defendant has not paid Plaintiff any worker's compensation benefits related to the alleged collision.

On June 8, 2009, Plaintiff was released to return to work. The same day, Defendant terminated Plaintiff's employment after determining that Plaintiff violated Defendant's policies requiring prompt reporting of work-related injuries and after concluding that Plaintiff had lied about the accident during the course of the internal investigation. Defendant reached the latter conclusion in part because Plaintiff's account of the incident was not corroborated by Ms. Sierra, Plaintiff could produce no other witnesses to corroborate his version of the story, Ms. Sierra's story remained consistent throughout the internal investigation, and Plaintiff's account of the incident allegedly changed several times during the course of the investigation.

On February 8, 2010, Plaintiff filed a Complaint in the Court of Common Pleas of Lancaster County alleging that Defendant terminated his employment in retaliation for reporting the work-related injury in pursuit of his workers' compensation claim. Defendant removed the case to federal court on the basis of diversity jurisdiction on March 31, 2010. On May 12, 2010, Defendant filed an Answer generally denying Plaintiff's allegations and asserting that it terminated Plaintiff's at-will employment for legitimate, non-retaliatory reasons. On November 8, 2010, Defendant filed a Motion for Summary Judgment (Doc. 13).[1] On November 23, 2010,

---

[1] Plaintiff also filed a Motion for Summary Judgment on November 8, 2010, which the Court ultimately denied.

Plaintiff filed a Response in Opposition thereto (Doc. 15). On December 6, 2010, Defendant filed a Reply (Doc. 17).

## II. LEGAL STANDARD

Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). See also Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex, 477 U.S. at 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). At the summary judgment stage, the court's function is not to weigh the evidence and determine

the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-movant.  See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001).  The court must award summary judgment on all claims unless the non-movant shows through affidavits or admissible evidence that an issue of material fact remains.  See, e.g., Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

**III.  DISCUSSION**

Defendant now moves this Court to grant summary judgment in its favor.  The only issue remaining before the Court is whether a terminated employee may assert a cause of action under Pennsylvania common law or worker's compensation retaliation if the employee reports a work-related injury, but does not file a claim petition and the employer did not pay worker's compensation benefits related to the employee's report.[2]

As this case appears before this Court on the basis of diversity jurisdiction, the Court is "bound to follow the substantive law of the forum state as expressed by its highest court." Burns v. United Parcel Service, Inc., 757 F. Supp. 518, 521 (E.D. Pa.1991).  Because the Pennsylvania Supreme Court has not directly addressed this issue, this Court is tasked with " 'predict[ing] the

---

[2]  Defendant also argues that it is entitled to summary judgment on the ground that Plaintiff failed to present evidence establishing that the employer's stated reasons for termination was a pretext for retaliation.  The Court rejected this argument in a previous Order denying Plaintiff's motion for summary judgment.  There, the Court explained that there remain genuine issues of material fact with respect to the issue of pretext that precluded the granting of summary judgment in Plaintiff's favor.  For the same reason, the Court cannot grant summary judgment in favor of Defendant.

position which that court would take in resolving this dispute.' " Id. In making this decision, "the well-reasoned decisions of intermediate state appellate courts are entitled to greater weight than those of lower state courts." Id.  For the reasons discussed below, the Court predicts that the Pennsylvania Supreme Court would find that a cause of action does exist.

In Shick v. Shirey, 716 A.2d 1231, 1238 (Pa. 1998), the Pennsylvania Supreme Court held that a "cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits."  Although the Pennsylvania courts have yet to enumerate the elements of this cause of action, several federal district courts in Pennsylvania have analogized this cause of action to a retaliatory discharge claim under Title VII. See Landmesser v. United Air Lines, Inc., 102 F. Supp. 2d 273, 277-78 (E.D. Pa. 2000).  Thus, to state a cause of action for workers compensation retaliation, an employee must establish that (1) he engaged in protected activity; (2) he suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) a causal connection exists between his protected activity and the employer's adverse action.  See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003).  If the employee is able to show these elements, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action.  Id.  If the employer satisfies this burden, the burden shifts back to the employee to prove that the employer's reason is pretextual by discrediting the proffered reason or adducing evidence to demonstrate that retaliatory animus was a motivating factor in the employer's decision.  See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Here, Plaintiff maintains that he engaged in protected activity under the Pennsylvania Workers' Compensation Act when he reported the work injury on April 19, 2009 to his

supervisor. Defendant argues that because Plaintiff did not file a claim petition before the adverse employment action occurred, Plaintiff did not engage in protected activity under Pennsylvania law.

In Pennsylvania, an employer generally may discharge an at-will employee for any reason or no reason at all. Geary v. U.S. Steel Corp., 456 Pa. 171, 319 A.2d 174, 176 (Pa. 1974) ("Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason."); Krajsa v. Keypunch, Inc., 622 A.2d 355, 358 (Pa. Super. Ct.1993) ("[A]n at-will employee may be terminated for good reason, bad reason, or no reason at all."). Thus, in Pennsylvania, an employee generally cannot bring a cause of action for wrongful termination. Greishaw v. Base Mfg., Civ. A. No. 06–184 Erie, 2008 WL 509077 (W.D. Pa. Feb. 21, 2008) ("It is undisputed that Pennsylvania law generally does not recognize a common law cause of action for the wrongful discharge of an at-will employee."). This presumption of at-will employment, however, is not absolute and an at-will employee may bring a cause of action for wrongful termination in very limited circumstances, "where the termination implicates a clear mandate of public policy." Weaver v. Harpster, 601 Pa. 488, 975 A.2d 555, 563 (2009).[3] "[A]lthough there is a line of Pennsylvania Supreme Court cases addressing the public policy exception, the Court has directly found such an exception in only two circumstances, both involving workers'

---

[3] "Following Geary, public policy exceptions to at-will employment have been recognized where the wrongful discharge claims have involved infringements on statutory and constitutional rights. These cases demonstrate Pennsylvania's traditional view that exceptions to at-will employment should be few and carefully sculpted so as not to erode an employer's inherent right to operate its business as it chooses." Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009).

compensation claims." Donaldson v. Informatica Corp., 2011 WL 2135195, at * 5 (W.D. Pa. May 31, 2011).

As aforementioned, in Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998), the Supreme Court of Pennsylvania recognized a narrow exception to the at-will employment doctrine prohibiting employers from terminating employees who seek worker's compensation benefits. In Shick, the Pennsylvania Supreme Court held that, although the Workers' Compensation Act did not expressly discuss retaliatory discharge, a public policy exception did exist. In articulating the public policy rationale behind this exception, the Pennsylvania Supreme Court relied in part on guidance from the Supreme Court of Indiana which had also dealt with this issue in a similar case. The Indiana Supreme Court explained that

> [i]n order for the goals of the [Workmen's Compensation Act] to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right.

Shick, 716 A.2d at 1237(quoting Frampton v. Cent. Indiana Gas Co., 260 Ind. 249, 297 N.E.2d 425, 427 (1973).

Defendant contends that the public policy exception provided by Shick is extremely narrow and applies only in cases where a plaintiff actually files a workers' compensation claim. To support this argument, Defendant relies on several cases and interprets them to mean that filing a claim is the only act that constitutes protected activity. Defendant refers to McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 288 (Pa. 2000), in which an employee who actually filed a claim petition with the Worker's Compensation Bureau was subject to protection

from adverse employment action. Defendant also contends that Santi v. Business Records Mgmt. LLC, Civ. Action No. 10-904, 2010 WL 3120047 (W.D. Pa. Aug. 9, 2010) stands for the proposition that the exceptions and subsequent protection provided by Shick and McLaughlin, are limited and may not be extended to the mere possibility of employer liability under the Workers Compensation Act. Defendant cites Alderfer v. NIBCO, Inc., Case No. Civ. Action 98-6654, 1999 WL 956375 (E.D. Pa. Oct. 19, 1999), and argues that the case stands for the proposition that an employer cannot be liable for worker's compensation retaliation if the employee does not file a claim petition before the adverse employment action occurs, even if the employer is aware of the work-related injury. Defendant also cites Murray v. Gencorp, Inc., 979 F. Supp. 1045, 1050 (E.D. Pa. 1997) to support its contention that the mere possibility or risk of liability under the WCA is insufficient to establish a cause of action.

   While the Court accepts Defendant's contentions that the mere *possibility* of employer liability under the WCA and the mere *awareness* of a work-related injury are insufficient grounds upon which to base a finding of engagement in protected activity, the Court rejects Defendant's arguments that the cited cases support the conclusion that filing a claim is the only conduct that constitutes protected activity.

   The Court finds that a close reading of Alderfer supports the conclusion that an employee who notifies her employer of her intent to file a workers compensation claim engages in protected activity. In concluding that the plaintiff in Alderfer did not engage in protected activity, the Alderfer court explained that "[i]t is undisputed that [the plaintiff] *never even mentioned the possibility* of a workers' compensation claim to anyone at Nibco." Alderfer, 1999 WL 956375, at * 6 (emphasis added). Thus, it stands to reason that according to the Alderfer

court, it was more than not actually filing a workers compensation claim that precluded the plaintiff from engaging in protected activity. Rather, it was also failing to place the employer on notice that the plaintiff intended to pursue workers compensation benefits that also contributed to the Alderfer court's determination.

Likewise, the Santi court, in concluding that the plaintiff failed to state a claim for workers compensation retaliation, made reference not only to the actual filing of a workers compensation claim, but also to the notice of plaintiff's intent. Specifically, the Santi court explained that "[h]ere . . . [the plaintiff's] Amended Complaint nowhere suggests that [he] was injured on the job, had filed *or intended to file* a claim for workers' compensation benefits, *or had otherwise exercised* any of his rights under the Workers' Compensation Act." Santi, 2010 WL 3120047, at * 8 (emphasis added). This language can be reasonably construed to mean that both the employee who *has filed* a claim and the employee who *intends to file* a claim have engaged in conduct that is protected by the statute. This conclusion is bolstered by the last part of the sentence, "or had *otherwise* exercised" which suggests that the employee's expression of his intent to file a claim is but one of several ways in which the employee can exercise his rights enumerated by the WCA.

The Court also finds that Defendant has misconstrued the "risk of liability" discussed in Murray. There, it appears that the speculative risk of liability was more related to whether an employee had even suffered a work-related injury and less related to the reporting of that injury or the filing of an actual claim. The Murray court held that the plaintiff was not protected by the WCA because the plaintiff alleged that the "defendants made a decision to fire him because they were afraid that he *may be injured* and *then* file a workers' compensation claim." Murray, 979 F.

Supp. at 1049 (emphasis in original).  The Murray court further opined that "policy [underlying the WCA] cannot be implicated if the purposes of the Act are not implicated.  There is no express statutory language in the Act that indicates a legislative articulation of public policy to prevent employers from firing employees who they deem a risk *but who have not been injured*."  Id. (emphasis added).  More importantly, like Santi, the Murray court also made explicit reference to the absence of the plaintiff's intent to file a worker's compensation claim in its discussion of whether the plaintiff engaged in protected activity.  Specifically, the Murray court underscored that there was no suggestion that the plaintiff "either had filed *or ever intended to file* a workers' compensation claim under the Act."  Id. (emphasis added).[4]

    In sum, it appears that federal courts in Pennsylvania have routinely predicted that the Pennsylvania Supreme Court would not limit the protection of the WCA to only those injured employees who have filed a workers compensation claim.  Rather, federal courts in Pennsylvania have oft predicted that the Pennsylvania Supreme Court, in furthering the public policy underlying the WCA, would extend the protection of the Act to injured employees who have expressed their intent to pursue workers compensation claims.  The Court finds that this conclusion aligns with the public policy and is in keeping with the narrow interpretation of this exception to the at-will employment doctrine.[5]

---

[4] See also DeLuca v. Simmons Mfg. Corp., 2009 WL 1165340 (M.D. Pa. Apr. 29, 2009) (court determined that an employee who was terminated six months before she had an opportunity to file a workers' compensation claim engaged in protected activity after construing her internal report of a work-related injury as an attempt to receive workers compensation benefits).

[5] Courts in other jurisdictions addressing this issue have reached the same conclusion. See e.g., Niblo v. Parr Mfg. Inc., 445 N.W.2d 351, 353 (Iowa 1989) (finding that the employee must intend or threaten to file a workers' compensation claim);  Fogel v. Trs. of Iowa Coll., 446 N.W.2d 451, 454-55 (Iowa 1989) (finding that an employee must give his employer "reason to believe a workers' compensation claim [is] contemplated"); Bumgarner v. Grafco Industries, LP,  581 F. Supp. 2d 1052, 1061 (S.D. Iowa 2008)

To be clear, the Court reiterates that it is not merely the employer's awareness of the work-related injury that evidences the plaintiff engaged in protected activity. Rather, it is the reporting of the work-related injury in conjunction with the employee's expression of intent to file a workers compensation claim that is enough to trigger the protection afforded by the Act. This stands to reason because, without question, the internal reporting of a workplace injury to the employer is the first step in pursuing a workers' compensation remedy.[6] A contrary conclusion limiting the definition of protected activity to only the filing of a claim would frustrate the Act by giving employers a window to escape liability by beating an injured employee to the punch. That is, an employer who had been notified that an employee has been injured on the job and knows of the injured employee's intent to file a workers compensation claim, if the employer is the first to act, may terminate the injured employee before that employee reasonably has the opportunity to actually the claim documents.[7] This Court's decision

---

(explaining that to show engagement in protected activity "the employee must assert a right in such a manner that it puts the employer on notice of the employee's desire to seek workers' compensation"); Hansen v. Sioux By-Products, 988 F. Supp. 1255, 1267 (N.D. Iowa 1997) (holding that an employee's conduct is protected if it alerts the employer to the employee's desire for workers' compensation for a work-related injury); Reedy v. White Consol. Indus., Inc., 890 F. Supp. 1417, 1433 (N.D. Iowa 1995) (finding where plaintiff presented evidence that he was fired when he first indicated a need or desire for workers' compensation benefits, employer not entitled to summary judgment on retaliation claim).

[6]See Goode v. American Airlines, Inc., 741 F. Supp. 2d 877, 891 (N.D. Ill. 2010) (an employee who completed an injury report on the date of the work accident "began the process of asserting his [WCA] rights" and thus engaged in protected activity); Gacek v. Am. Airlines, Inc., 614 F.3d 298, 299 (7th Cir. 2010) ( "[W]hen he [ ] first reported the injury[,] a claim file had been opened by the airline's administrator of workers' claims; and a discharge motivated by such an injury report is a retaliatory discharge under Illinois workers' compensation law.").

[7] In deciding a similar issue, this scenario was contemplated and rejected by the Ohio Supreme Court.
  [T]he Ohio Supreme Court has held that an injured employee need not actually file a claim in order to claim the protections of the statute. See Roseborough v. N.L. Industries (1984), 10 Ohio St.3d 142, 143, 10 OBR 478, 462 N.E.2d 384. In Roseborough the court adopted the reasoning of Justice Brown's concurrence in Bryant v. Dayton Casket Co. (1982), 69 Ohio St.2d 367, 23 O.O.3d 341, 433 N.E.2d 142. There, Justice Brown

recognizes the practicality of affording an injured employee who desires to seek workers compensation benefits the opportunity to complete the administrative task of filling out and filing workers compensation paperwork, while ensuring that the a window of time between the time of reporting and filing does not allow an employer to escape its responsibility under the WCA.[8] This decision also aims to uphold the employer's right to operate its business as it sees fit, to maintain the limited nature of this exception to the at-will employment doctrine, and to avoid expanding the meaning of protected activity to include those instances where an employee is injured on the job but has no intention of seeking workers' compensation benefits or otherwise invoking the protections of the WCA.

---

        expressed his concern that "a requirement that an actual filing of a claim is the only means by which a proceeding can be instituted or pursued would frustrate the legislative intent as evinced in R.C. 4123.90." Bryant at 372, 23 O.O.3d 341, 433 N.E.2d 142 (Brown, J., concurring). "If such a requirement was mandated," he continued, "an employer could, upon receipt of an employee's request to complete the form prior to filing, fire the claimant and thus avoid the consequences of R.C. 4123.90. * * * [S]uch a requirement would also result in a footrace, the winner being determined by what event occurs first-the firing of the employee or the filing of the claim with the bureau." Bryant at 372-373, 23 O.O.3d 341, 433 N.E.2d 142 (Brown, J., concurring).

Sutton v. Tomco Machining, Inc., 930 N.E.2d 815, 819.

[8] The Court also rejects Defendant's argument that including reporting a work-related injury and notifying an employer of an intent to file a workers compensation claim in the realm of protected activity would exceed the Court's authority, infringe on the role of the legislature, and cause the exception to swallow the rule of at-will employment in the Commonwealth. As Defendant acknowledges, in Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511, 517 (Pa. 2005), the Pennsylvania Supreme Court rejected similar arguments and held that a supervisor who was terminated after refusing to dissuade an employee from pursuing a worker's compensation claim could assert a valid claim for workers' compensation retaliation. The Court did so despite the absence of specific language in the statute or in Shick addressing this scenario of third-party claims. Rather, the Court focused its analysis on promoting the public policy underlying Pennsylvania's WCA. The Rothtock court held that "there is little doubt that the policy of protecting subordinate employees' rights to seek WC benefits will be well-nigh eliminated if employers can avoid the rule of Shick by pressuring and firing supervisors who do not or cannot coerce subordinate employees into foregoing their rights." Id. at 516. Here, the Court finds that employee's rights to seek workers compensation benefits would similarly be jeopardized if employers were allowed to avoid the rule of Shick by winning the footrace and firing employees before they have a chance to file a worker's compensation claim.

Here, as the Court has already determined that genuine issues of material fact exist as to whether Defendant's proffered reason for terminating Plaintiff's employment was pretextual, Defendant's sole remaining argument in support of its motion for summary judgment is that Plaintiff cannot establish that he engaged in protected activity because he did not file a workers' compensation claim.  The Court does not agree.  Plaintiff clearly established, and Defendant does not contest, that Plaintiff reported a work-related injury.  Based on the record and arguments presented by both parties, the Court cannot determine whether Plaintiff intended to pursue workers' compensation benefits.  Because a genuine issue of material fact exists as to whether Plaintiff, after reporting his work-related injury, also expressed to Defendant his intent to pursue a workers compensation claim, Defendant's motion for summary judgment must be denied.

## IV.  CONCLUSION

Based on the foregoing, the Court denies Defendant's Motion for Summary Judgment. An Appropriate Order follows.

**BY THE COURT**:

**/s/ Petrese B. Tucker**
_____
**Hon. Petrese B. Tucker, U.S.D.J.**